1  DONALD AMAMGBO, ESQ.
   AMAMGBO & ASSOCIATES
2  7901 Oakport Street, Suite 4900
   Oakland, California 94621
3  Telephone: (510) 615-6000
   Facsimile:  (510) 615-6025
4  Email: Donald@amamgbolaw.com

5

6  REGINALD TERRELL, ESQ.
   THE TERRELL LAW GROUP
7  Post Office Box 13315, PMB #148
   Oakland, California 94661
   Telephone: (510) 237-9700
8  Facsimile:  (510) 237-4616
   Email: Reggiet2@aol.com
9

FILED
JUL 26 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing   ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LOCSIN and JAMES BLACKWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | CASE NO.: **C10-03272 PVT**<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs JENNIFER LOCSIN and JAMES BLACKWELL ("Plaintiffs"), by and through their attorneys, allege on personal knowledge as to all facts related to themselves and on information and belief as to all other matters, which are based upon, among other things, the investigation made by Plaintiffs through their counsel and personal knowledge, as follows:

CLASS ACTION COMPLAINT                                                                                           1

## PRELIMINARY STATEMENT

1. This is a class action lawsuit, brought by, and on behalf of, a nationwide class of individuals whose privacy rights were violated by the actions of Google Inc. ("Google") through its Street View service.

2. Google operates a service called Street View, which is incorporated into its maps and earth view services. Street View allows users of its Maps and Google Earth Service to view actual photographs of addresses throughout the United States and the world. To provide this service, Google has equipped vehicles with specially designed cameras which take millions of photographs as these camera-equipped vehicles drive our nation's streets and streets internationally.

3. Unbeknownst to the world until May 2010, Google also equipped these vehicles with proprietary technology that records all data being transmitted on open Wi-Fi networks within range as they were being driven around photographing most of the U.S and much of the world.

5. When launching its Street View service, Google recorded every website visited, every video watched and every email sent and or received over open Wi-Fi networks while in range of Google's Street View vehicles. However, Google conveniently failed to tell and or provide anyone with clear information detailing the nature of the new service.

6. Google has publicly admitted that its Street View program presents privacy concerns, and has made several waves of modifications to the program. However, the modifications Google has made fall short and do not go far enough to address the problem. Furthermore, Google's actions have already caused damage because the Street View service disclosed private user information the moment it was launched.

7. Google's public disclosure of private user data violates users' rights under the Federal Wiretap Act, the Federal Computer Fraud and Abuse Act, the Federal Stored Communications Act, and California common law.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for

deprivation of rights guaranteed under the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* This Court also has jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' state common law claims. Jurisdiction is also founded upon 28 U.S.C. § 1332(d) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and minimal diversity of citizenship.

9. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) and (c). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District. Defendant Google resides here as it maintains its principle office and headquarters in this District.

## PARTIES

10. Plaintiff Jennifer Locsin is a resident of Contra Costa County, California. During all relevant times, she used an open Wi-Fi network at her residence, and her residence is viewable on Google Street View. The images available on Street View confirm that Plaintiff Locsin lived at this residence while the Google Street View vehicles photographed her home.

11. Plaintiff James Blackwell is a resident of Alameda County, California. During all relevant times, he used an open Wi-Fi network at his residence, and his residence is viewable on Google Street View. The images available on Street View confirm that Plaintiff Blackwell lived at this residence while the Google Street View vehicles photographed his home.

12. Defendant Google Inc. develops and operates a variety of Internet-based products and services, including the world's most visited website, www.google.com. It is a Delaware Corporation headquartered in Santa Clara County, California, at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google Inc. does business throughout the State of California and the nation.

## COMMON FACTS

13. On or about May 25, 2007, Google launched an enhancement to its Maps and Earth programs named Google Street View.

14. Google Street View initially covered only five U.S. cities, but now covers most of the United States of America and much of Australia, Canada, Europe, Japan, Mexico and New Zealand to name just a few of the foreign nations.

15. Google Street View features panoramic photographs of the streets and surrounding environs of the areas it covers. Thus upon entering a specific location and or address into Street View, users can interact with the panoramas by panning and zooming so as to view exactly how that particular location and or address appears.

16. Google has captured millions of photographs necessary for these connected panoramas by traveling the globe in especially equipped vehicles. These vehicles are equipped with nine directional cameras that record continual and connected 360 –degree horizontal/290-degree vertical photographs of the streets traveled.

17. However, it has been disclosed that Google's Street View vehicles are equipped with more than just cameras and are being used to capture more than just images.

18. The vehicles are also equipped with antennas for gathering cellular and or Wi-Fi network data.

19. On April 27, 2010 Google posted an entry on its European Public Policy Blog in response to inquiries a from the German Data Protection Authority("DPA") concerning the specific data Google's Street View vehicles collect. In this post, Google explains that it collects the SSID (essentially Wi-Fi network name) and MAC address (basically the ID number of the Wi-Fi network's hardware).

20. Google goes on to explain in its post:

> **What do you mean when you talk about Wi-Fi network information?**
>
> Wi-Fi networks broadcast information that identifies the network and how that network operates. That includes SSID data (i.e. the network name) and MAC address (a unique number given to a device like a Wi-Fi router).
>
> Networks also send information to other computers that are using the network, called payload data, but Google does not collect or store payload data.

http://googlepolicyearope.blogspot.com/2010/04/data-collected-by-google-cats.html.

21. "Payload data" refers to the actual data being carries by a network, such as the content of the websites, passwords entered, and the bodies of the emails. In short, it is the content an individual views and uses online.

23. Google represented April 27, 2010 that it does not collect payload data.

24. However, on or about Friday, May 14, 2010, Google announced via another blog post that it had been using its Street View to collect payload data of open Wi-Fi networks for several years.

25. Google contends the method for collecting the data was developed in 2006 before the launch of Street View. Ant that it launched the payload data collection data in 2007, the same year it launched Street View.

26. On or about May 19, 2010, while speaking at the Google I/O conference, Google cofounder Sergey Brinstated said the following about this issue:

"In short, let me just say that we screwed up. I'm not going to make any excuses about it. The answer is yes. We so have a lot of internal controls but obviously they didn't prevent this error form occurring." www.zdnet.com/blog/btl/sergey-brin-we-screwed-up-on-wifi-data-collection/34579

27. While Google has characterized this privacy invasion as an "error," it has not identified the quantity and or nature if the data collected. Additionally, it has not disclosed where the data resides, whether it has been copied, transmitted to other persons and or entities and or who has accessed the data in the three years Google has gathered it.

**Google Wants to Destroy the Evidence**

28. In a blog post on or about May 14, 2010, Google stated it was working with regulators to destroy the collected data.

29. On or about May 17, 2010, in an update to the May 14 bog post, Google stated it worked with a third-party vendor to destroy the data collected in Ireland. The third-party vendor confirmed the destruction of the data collected in Ireland in a letter dated on or about May 16, 2010 letter.

30. On or about May 21, 2010, the London Financial Times reported Google had agreed to halt the destruction of the collected data.

**Facts Relating to Plaintiffs**

31. At all relevant times, Plaintiffs have used an open Wi-Fi network at their place of residence which are the type of networks susceptible to unauthorized access by Google Street View vehicles.

32. At all times relevant, Plaintiffs place of residence was captured by Google Street View, meaning on information and belief, that Google used its Street View vehicle(s) to capture any and all payload data being transmitted over their open Wi-Fi network.

**Google Admits to Privacy Problems with Street View**

25. On Thursday, February 11, 2010, Google reacted to the stream of negative press and blog postings by changing some of the default settings in Street View.

26. Also on February 11, Google issued an official blog posting in which the company admitted that many users had concerns that Street View violated their privacy. Todd Jackson, *Millions of Street View Users, and Improvements Based on Your Feedback*, February 11, 2010, available at http://gmailblog.blogspot.com/.

27. Despite ongoing modifications, Google has not sufficiently altered the Street View

Program to remedy the ongoing privacy violations caused by Street View. For example, the information sharing features of the Street View program continue to operate unless the user affirmatively opts out of these features.

28. Google's official Privacy Policy assures customers that, because "[p]eople have different privacy concerns and needs. . . Google strives to offer [its users] *meaningful and fine grained choices* over the use of their personal information." Google Privacy Policy, http://www.google.com/privacy.html.

29. By automatically sharing user information without user authorization or knowledge, Street View does precisely the opposite. Far from granting its customers well tuned controls by which users can control the use of their personal data, the Street View program is an indiscriminate bludgeon, forcing all Gmail users to share their personal data in a public forum without their consent or knowledge.

## CLASS ALLEGATIONS

30. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of themselves and the following class:

All persons in the United States whose Wi-Fi payload data was collected by Google.
Street View from May 25, 2007 to and including and May 14, 2010.

Excluded from the class are Defendant, its legal representatives, assigns and successors, and any entity in which Defendant has a controlling interest. Also excluded is the judge to who this case is assigned and the judge's immediate family.

31. The putative class members are so numerous that joinder of individual claims are impracticable.

32. Plaintiffs' claims are typical of the claims of all of the other putative class members.

33. Plaintiff will fairly and adequately represent and protect the interests of the other putative class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the putative class members, and have the financial resources

to do so, neither Plaintiffs nor their counsel have any interest adverse to those of the other putative class members.

34. Absent a class action, most putative class members would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

35. Google has acted and failed to act on grounds generally applicable to Plaintiffs and the other putative class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the putative class members.

36. The factual and legal bases of Google's liability to Plaintiffs and to the other putative class members are the same, resulting in injury to Plaintiffs and to the putative class members. Plaintiffs and the other putative class members have all suffered harm and damages because of Google's wrongful conduct.

37. Plaintiff reserves the right to change, modify and or amend the class definition stated.

38. There are many questions of law and fact common to the claims of Plaintiffs and to the putative class, and those questions predominate over any questions that may affect individual putative class members. Common questions for the class include bat are not limited to the following:

(a) Whether Google's conduct described herein violates the Wiretap Act;

(b) Whether Google's conduct described herein violates California's Computer Crime Law; and,

(c) Whether Google's practices described herein constitute unfair and deceptive acts or practices;

(d) Whether Google's practices described herein constitute breach of contract.

39. The questions of law and fact common to the putative class members predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

## FIRST CAUSE OF ACTION
**Violation of 18 U.S.C Section 1030, the computer Fraud and abuse Act ("CFAA")**
**(On behalf of Plaintiffs and the putative class)**

40. 18 U.S.C Section 2520(a) authorizes private rights of action under the Wiretap Act.

41. Google violated 18 U.S.C Section 2520(1)(a) by intentionally intercepting and or endeavoring to intercept electronic communications carries to Plaintiffs and putative class members Wi-Fi networks without authorization, knowledge, or consent while the communications were en route, via its Street View Wi-Fi Data Collection practices.

42. The transmission of data by Plaintiffs and putative class members over their Wi-Fi networks between their computers and the Internet constitute "electronic communications" within the meaning of 18 U.S.C Section 2510 (12).

43. Google's Wi-Fi Data Collection practices as described herein constitute "interceptions" within the meaning of Section 2510(4).

44. Plaintiff brings this cause of action within two (2) years of the date he first had a reasonable opportunity to discover the violation.

45. Plaintiff seeks such a preliminary and equitable or declaratory relief as may be appropriate, damages consistent with Section 2520(c), and a reasonable attorneys' fee and costs.

46. Plaintiff seeks the maximum actual damages, profit disgorgement, or statutory damages allowed under Section 2520(c)(2)(A) or (B).

## SECOND CAUSE OF ACTION
**Violation of 18 U.S.C Section 1030, the computer Fraud and abuse Act ("CFAA")**
**(On behalf of Plaintiffs and the class)**

47. Plaintiff incorporates by reference the foregoing allegations.

48. 18 U.S.C Section 1030 (g) authorizes private rights of action under the CFAA provided the "conduct involves 1 of the factors set forth in sub-clauses (I), (II), (III), (IV), or (V) of subsection (c) (4) (A) (i)."

49. Google 18 U.S.C Section 1030(a) (2) (C) by intentionally accessing the computers, as defined by Section 1030(e) (1), of Plaintiffs and putative class members without authorization via its street View Wi-Fi collection equipment and activities and thereby obtaining payload data from their protected computers, as defined by Section 1030(e) (2) (B) because they are used in interstate commerce, of Plaintiffs and putative class members.

50. Google violated 18 U.S.C Section 1030(a) (5) (a) by knowingly causing the transmission of a program, information, code, or command within Google's Street View Wi-Fi data collection equipment to gather the payload data of Plaintiffs and putative class members' protected computers as defined in 18 U.S.C Section 1030(e) (2) (B) because they are used in interstate commerce and/or communication. By gathering Plaintiffs and putative class members, payload data, Google intentionally caused damage without authorization to Plaintiffs and putative class members' protected computers by impairing the integrity of information and/or data.

51. Google violated U.S.C Section 1030(a)(5)(C) by intentionally accessing Plaintiffs and putative class members' protected computers without authorization, and as a result, caused damage to the Plaintiffs and putative class members' protected computers by impairing the integrity of information and/or data.

52. Because of these takings, Google's conduct has caused a loss to one or more persons during any one-year period aggregating at least $5,000 in value in real economic damages, as articulated in Section 1030 (c)(4)(a)(i)(I) and required by Section 1030(g).

53. Plaintiffs and putative class members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy and economic damages.

Plaintiff brings this cause of action within two (2) years if the date of the discovery of the damage.

54. Google's action, as described herein, is not based on negligent design or manufacture of its Street View Wi-Fi data collection equipment, but rather intentional conduct design, and manufacture.

55. Google's unlawful access to Plaintiffs' computer network has also caused Plaintiff irreparable injury. Unless restrained and enjoined, Google will continue to commit such acts. Plaintiffs remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling Plaintiff to remedies, including injunctive relief, as provided by Section 1030(g).

### THIRD CAUSE OF ACTION
Violation of Cal. Penal Code Section 501, California's Computer Crime Law ('CCCL")
(On behalf of Plaintiffs and the putative class)

56. Plaintiff incorporates by reference the foregoing allegations.

57. Google knowingly used data, computers, computer systems, or computer networks- its Street View Wi-Fi data Collection equipment by collecting Plaintiffs and putative class members payload data to wrongfully control and or obtain data, the payload data, in violation of Section 512(c)(1).

58. Google knowingly accessed and without permission took, copied and or made use of Plaintiffs and putative class members' payload data in violation of Section 502(c)(2).

59. Google knowingly and without permission used and or caused to be used computer services by impermissibly accessing, collecting and transmitting Plaintiffs and class' members payload data in violation of Section 502(c)(3).

60. Google knowingly and without permission, provided and or assisted in providing a means of accessing a computer, computer system and or computer network by creating a command that allowed it to impermissibly access, collect and or transmit Plaintiffs and putative class members' payload data in violation of Section 502(c)(6)

61. Google knowingly and without permission accessed or caused to be accessed Plaintiffs and putative class members' computers and/or computer networks by impermissibly collecting Plaintiffs and putative class members' payload data in violation Section 510(c)(7)

62. Google knowingly introduced a computer contaminant, as defined in Section 502(b)(10), by introducing computer instructions designed to record and or transmit information- Plaintiffs and putative class members' payload data on Plaintiffs and putative class members' computers and/or networks without the intent and or permission of the owners of that violation of Section 502(c)(8).

63. As a direct and proximate result of Google's' unlawful conduct within the meaning of Section 502, Google has caused loss to Plaintiffs and putative class members' in an amount to be proven at trial. Plaintiffs are further entitled to recover their attorneys' fees pursuant to Section 502(e).

64. Plaintiffs and putative class members' have also suffered irreparable injury from these acts, including the collection of their personal information contained in the collected

payload data. Accordingly, Plaintiffs and putative class members have no adequate remedy at law, entitling them to injunctive relief.

## FOURTH CAUSE OF ACTION
### Violation of Cal. Bus. & Prof. Code Section 17200
**(On behalf of Plaintiffs and the putative class)**

65. Plaintiff incorporates by reference the foregoing allegations.

66. Section 17200 proscribes unfair business competition and defines it to include any unfair, unlawful, or fraudulent business practice or act.

67. Google violated Section 17200 through its conduct alleged above, including its unlawful violations of Wiretap Act, the CFAA, and the CCCL.

68. As a result of Google's unlawful conduct of herein, Plaintiffs and the putative class suffered injuries and have no adequate remedy at law. Therefore, Plaintiff individually and on behalf of the class, seeks an order enjoining Google from continuing its Wi-Fi Payload Data Collection practices.

## FIFTH CAUSE OF ACTION
### Accounting
**(On behalf of Plaintiffs and the putative class)**

69. Plaintiff incorporates by reference the foregoing allegations.

70. By collecting and storing personal and private data of the class, Google undertook fiduciary relationship with and owed a fiduciary duty to the class to make sure that any data collected would be kept safe, secure, protected from theft and available to Plaintiffs and the putative class.

71. Plaintiffs and the putative class are unable to ascertain the exact quantity and nature of the data that Google collected in the quantity and nature of data, if any, that remain in Google's possession, custody, or control. An unknown balance of data is due to Plaintiffs and the

putative class that cannot be ascertained without an accounting, the means by which are within the knowledge of Defendant

72. Accordingly, Plaintiff seeks an Order by the Court directing an equitable accounting of all data collected by Google and the quantity and nature of all data, if any, remaining in Google's possession, custody, or control.

## PRAYER FOR RELIEF

94. **WHEREFORE** Plaintiff, on behalf of herself and all others similarly situated, hereby demand judgment against defendant Google as follows:

a. For an order certifying the class proposed herein and appointing Plaintiff identified herein and their counsel to represent the class;

b. For a declaration that Google's acts and or omissions constitute a knowing and unauthorized invasion of Plaintiffs rights in violation of the laws of the United States and the State of California;

c. For preliminary and permanent injunctive relief enjoining and preventing Google from continuing to operate its Street View program without appropriate safeguards, default provisions and or opt-in mechanisms to ensure the private data of its users is not improperly disclosed, compromised and or transmitted in the future;

d. For an award of damages, including without limitation damages for actual harm, profits made by Google in the operation of its Street View program, and statutory damages where applicable;

e. For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the putative class members in prosecuting this matter; and

f. For an award of such other relief in law and equity which Plaintiffs and the putative members' class may be entitled.

DATED: July 24, 2010

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: July 24, 2010

THE TERRELL LAW GROUP
AMAMGBO & ASSOCIATES

_____
REGINALD TERRELL, ESQ.


DONALD AMAMGBO, ESQ.
AMAMGBO & ASSOCIATES
7901 Oakport Street, Suite 4900
Oakland, California 94621
Telephone: (510) 615-6000
Facsimile:  (510) 615-6025

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile:  (510) 237-4616